JAY K. GOLDBERG [JG-1294]
GOLDBERG & ALLEN, LLP
49 West 37th Street, 7th Floor
New York, New York  10018
212-766-3366

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
---------------------------------------------------------------------------------X
KIYEE KYE and JESSICA KIYEE,                                    21 CV 3660
                                        Plaintiffs,             **COMPLAINT**

                    - against -                                 **PLAINTIFF**
                                                               **DEMANDS A**
                                                               **TRIAL BY JURY**

CITY OF NEW YORK, DEPUTY INSPECTOR ROBERT
O'HARE, P.O. JONATHAN DONES, SHIELD 27390,
P.O. GARCIA, POLICE SERGEANT LNU,
P.O. KACHUN CHEUNG, SHIELD 5890, P.O. CONNOR,
SHIELD 20912, P.O. MAUREEN CAREY, SHIELD 20116,
P.O. JAMES SHOULDIS, SHIELD16502, P.O. DANIELLE
AMBRECHT, SHIELD 17611, P.O. JOHN DOE 1-3,
P.O. JANE DOE 1-2,
                                        Defendants.
---------------------------------------------------------------------------------X

**PARTIES, JURISDICTION and VENUE**

1.      Plaintiff, KIYEE KYE, is a 36 year old Black male, who at all times relevant

to this action was a resident of New York and a citizen of the United States.

2.      Plaintiff, JESSICA KIYEE, is a 21 year old Black female, who at all times

relevant to this action was a resident of New York and a citizen of the Untied States.

She is the cousin of Plaintiff KYE.

3.      Defendant, City of New York ("NYC"), is a municipality within the State of

New York, which includes New York County.  NYC maintains a police department, the

New York City Police Department ("NYPD"), which is an agency of the municipality.

1

4.      Upon information and belief, Defendant DEPUTY INSPECTOR ROBERT O'HARE, was at all relevant times a uniformed officer with the NYPD acting in a supervisory and policy making capacity as the commanding officer of the 6th Precinct. All actions by Defendant O'HARE complained of herein were taken in the course of his employment and under color of law.  Defendant O'HARE is being sued in both his individual and official capacities.

5.      Upon information and belief, Defendant P.O. JONATHAN DONES, SHIELD 27390, was at all relevant times a police officer with the NYPD assigned to the 6th Precinct.  All actions by DONES complained of herein were taken in the course of his employment and under color of law.  DONES is being sued in both his individual and official capacities.

6.      Upon information and belief, Defendant P.O. KACHUN CHEUNG, SHIELD 5890, was at all relevant times a police officer with the NYPD assigned to the 6th Precinct.  All actions by CHEUNG complained of herein were taken in the course of his employment and under color of law.  CHEUNG is being sued in both his individual and official capacities.

7.      Upon information and belief, Defendant SERGEANT LNU (SGT LNU [Last Name Unknown]),  was at all relevant times a uniformed police officer with the NYPD assigned to the 6TH Precinct in a supervisory capacity.  All actions by SGT LNU complained of herein were taken in the course of his employment and under color of law.  SGT LNU is being sued in both his individual and official capacities.

8.      Upon information and belief, Defendant POLICE OFFICER GARCIA,  was at all relevant times an officer with the NYPD assigned to the 6th Precinct.  All actions by

GARCIA complained of herein were taken in the course of his employment and under color of law.  GARCIA is being sued in both his individual and official capacities.

9.      Upon information and belief, Defendant P.O. CONNOR, SHIELD 20912, was at all relevant times a police officer with the NYPD assigned to the 6th Precinct.  All actions by CONNOR complained of herein were taken in the course of his employment and under color of law.  CONNOR is being sued in both his individual and official capacities.

10.     Upon information and belief, Defendant P.O. MAUREEN CAREY, SHIELD 20116, was at all relevant times a police officer with the NYPD assigned to the 6th Precinct.  All actions by CAREY complained of herein were taken in the course of her employment and under color of law.  CAREY is being sued in both her individual and official capacities.

11.     Upon information and belief, Defendant P.O. JAMES SHOULDIS, SHIELD 16502, was at all relevant times a police officer with the NYPD assigned to the 6th Precinct.  All actions by SHOULDIS complained of herein were taken in the course of his employment and under color of law.  SHOULDIS is being sued in both his individual and official capacities.

12.     Upon information and belief, Defendant P.O. DANIELLE AMBRECHT, SHIELD 17611, was at all relevant times a police officer with the NYPD assigned to the 6th Precinct.  All actions by AMBRECHT complained of herein were taken in the course of her employment and under color of law.  AMBRECHT is being sued in both her individual and official capacities.

13.     Upon information and belief, Defendant P.O. JOHN DOE 1-3, (hereafter

"JOHN DOE 1-3" or, collectively with JANE DOE 1-2, the "DOE" defendants) were at all relevant times male ploice officers with the NYPD assigned to the 6th Precinct, whose names and shield numbers are unknown at this time.  All actions by JOHN DOE 1-3 complained of herein were taken in the course of their employment and under color of law.  JOHN DOE 1-3 are being sued in both their individual and official capacities.

14.    Upon information and belief, Defendant P.O. JANE DOE 1-2, (hereafter "JANE DOE 1-2 ", or, collectively with JOHN DOE 1-3, the "DOE" defendants) were at all relevant times female police officers with the NYPD assigned to the 6th Precinct, whose names and shield numbers are unknown at this time.  All actions by JANE DOE 1-2 complained of herein were taken in the course of their employment and under color of law.  JANE DOE 1-2 are being sued in both their individual and official capacities.

15.    Original jurisdiction of this Court is founded upon 28 U.S.C. §1331, et seq., specifically 28 U.S.C. § 1343.

16.    Venue is properly laid in this District pursuant to 28 U.S.C. §1391(b).

17.    The instant action is commenced within three years of the date of accrual of all claims and one year and ninety days of the date of accrual for all State claims.

**FACTS GIVING RISE TO THE CLAIMS**

18.    On June 2, 2020, pursuant to Executive Orders 118 and 119, New York City Mayor Bill de Blasio expanded a previously announced curfew to cover the hours of 8:00 pm to 5:00 am each day until June 8.

19.    Pursuant to these orders (the "Curfew Orders") individuals traveling "to and from essential work" were specifically exempt from the Curfew Orders.

20.    Pursuant to the Curfew Orders, the failure to comply with the curfew "shall

4

result in an order to" disperse by the police or other law enforcement agents.

21.    On June 2, 2020, the NYPD issued internal instructions that all officers were required to "issue reminders to anyone observed violating the curfew that they are not allowed in public ... [and to] direct them to return to their homes ... Enforcement will only be taken after several warnings are issued and the violator is refusing to comply."

22.    On June 2, 2020, at approximately 8:00 p.m., Plaintiffs KYE and KIYEE were walking on Bleecker Street towards the F train subway stop at Broadway and Lafayette Street in lower Manhattan.

23.    Plaintiff KIYEE was at the time categorized as an essential food worker and was walking towards the subway after completing her employment shift and stopping for some take-out food.

24.    Plaintiff KYE, also categorized as an essential worker, though not working that date, had gone to Manhattan to escort Plaintiff KIYEE to the home they shared in Jamaica, Queens.

25.    Plaintiffs were walking south on Lafayette Street and turned onto Bleecker Street and walked towards Broadway.

26.    At that time, Plaintiffs observed a group of officers, believed to include some of the Defendants, chase a young Black male and tackle him to the sidewalk on Bleecker Street, about half a block away.

27.    Plaintiffs were unaware of what precipitated this police action but, out of concern that a number of officers might resort to excessive force, decided to record the encounter from a safe distance.

28.    As Plaintiff KYE took out his cell phone to record the incident, SGT LNU

and one of the DOE defendants, pointed in Plaintiffs' direction and ordered other officers to confront them.

29.    Defendants CHEUNG, SHOULDIS, AMBRECHT and one of the DOE defendants walked towards plaintiffs and, while still at least 100 feet from the group of officers engaged with the young Black male, ordered plaintiffs to move back.

30.    Both Plaintiffs complied with the direction to step back; Plaintiff KYE handed the cell phone to Plaintiff KIYEE who activated the recording feature.

31.    Plaintiff KYE raised his hands over his head to indicate that he presented no danger to the officers.

32.    Defendants CHEUNG, SHOULDIS, AMBRECHT, and DOE defendants failed to comply with the Curfew Orders or the NYPD instructions requiring that several warnings to leave the area be given prior to any further police action.

33.    Instead, without warning, Defendants CHEUNG, SHOULDIS, AMBRECHT and DOE defendants grabbed Plaintiff KYE and, subsequently joined by DONES and other DOE defendants, tackled him to the ground.

34.    Plaintiff KYE was beaten by multiple defendants including, without limitation, DONES, CAREY, SHOULDIS, SGT LNU, CHEUNG, AMBRECHT and DOE defendants about the torso and legs, his arms violently twisted behind him, his head struck with a police baton, and punched at least twice after being handcuffed.

35.    Plaintiff KIYEE was pushed to the side by one or more of the defendants, including SGT LNU, CONNOR and DOE defendants.

36.    Plaintiff KIYEE, surrounded by officers and standing apart from the defendants assaulting Plaintiff KYE, told the officers that she was an essential worker

on her way to the subway with her cousin as an escort.

37.     While Plaintiff KIYEE was speaking with the officers, Defendant O'HARE, who had driven to a nearby location, exited his vehicle and rushed at Plaintiff KIYEE.

38.     Despite the fact that Plaintiff KIYEE had done nothing to interfere with the police actions against either the unknown young male or against Plaintiff KYE, Defendant O'HARE instructed that she be placed under arrest for Obstructing Governmental Administration.

39.     Plaintiff KIYEE was forcibly pinned against the building wall by Defendant DONES or CONNOR, with the full weight of the officer's body against her.

40.      Plaintiff KIYEE was placed in plastic restraints by Defendants DONES and CONNOR and her cell phone, which was still recording, was taken from her.

41.     While Plaintiff KIYEE was standing in the street, Defendant O'HARE drove past and shouted "you're stupid" at her; this was heard by and commented upon by officers present at the scene.

42.     While Plaintiffs were being taken into custody, an unknown white male stood nearby taking a video with his cell phone.

43.     In stark contrast to how the two Plaintiffs, who are Black, were treated, the white male was approached by Defendant SGT LNU who asked for identification and politely asked the person to leave the area.

44.     Plaintiffs were transported in separate vehicles to the 6th Precinct where they were given summonses for curfew violation and released at approximately midnight.

45.     Both Plaintiffs suffered physical injuries as a result of the assault by the

officers.

46.    Plaintiff KIYEE suffered injuries, including without limitation, to her upper and lower extremities requiring the use of crutches for over a month and a severe weakness and numbness in her right arm which lasted over three months and continues to this date.

47.    Plaintiff KYE suffered injuries, including without limitation, bruising to his entire body and long term pain to his back and leg and recurrent periodic dizziness.  In addition, as a result of his injuries, Plaintiff KYE was unable to work for approximately one month. The pain in his lower back continues to this date.

48.    Both Plaintiffs suffered emotional distress and mental anguish manifesting in, among other things, loss of sleep and loss of appetite.

49.    The summonses and all charges against the Plaintiffs were dismissed on motion of the District Attorney of New York County without a court appearance.

**Plaintiffs Were Victims of a Course of Conduct by and the Policies and Practice of the NYPD and the NYC of New York**

50.    The assault and unlawful arrest of Plaintiffs was consistent with a course of conduct by, and the policies and practice, of the NYPD and Defendant NYC.

51.    Since at least 2003, based on public reports, lawsuits and complaints, Defendant NYC was on notice that members of the NYPD were not properly trained or supervised in protecting the constitutional rights of civilians.

52.    Among the constitutional rights routinely violated by members of the NYPD was the First and Fourteenth Amendments to the United States Constitution, specifically the right of civilians to record officers who were engaged in police activity,

as well as the concurrent State constitutional rights.

53.    Despite knowledge of such conduct, Defendant NYC failed to discipline the officers involved and failed to institute and enforce policies to prevent the reoccurrence of such conduct.

54.    The failure to address these patterns of conduct constitute a policy or practice of Defendant NYC to permit and encourage the use of excessive force and other illegal conduct to suppress the constitutionally protected First Amendment and concurrent State constitutional rights of civilians.

55.    In an October 2015 report the New York City Department of Investigation concluded that the training of police officers had "no discernable reference to managing interactions, facilitating First Amendment rights, and minimizing the use of force" and that "the NYPD frequently failed to impose discipline even when provided with evidence of excessive force."

56.    Following the 2003 Iraq War protests, the 2004 Republican National Convention protests and the 2011 Occupy Wall Street protests, numerous lawsuits were filed which detailed the actions by the NYPD which interfered with the protected First Amendment rights of the protestors and journalists covering the protests. [1]

---

[1] See *Lynch v. City of New York*, 952 F.3d 67, 76 (2d Cir. 2020); *Landers v. City of New York*, No. 16-CV-5176 (PKC)(CLP), 2019 WL 1317382, at *6–7 (E.D.N.Y. Mar. 22, 2019); *Case v. City of New York*, 233 F. Supp. 3d 372, 405 (S.D.N.Y. 2017); *Higginbotham v. City of New York*, 105 F. Supp. 3d 369, 375 (S.D.N.Y. 2015); *Gersbacher v. City of New York*, 134 F. Supp. 3d 711, 721 (S.D.N.Y. 2015); *Dinler v. City of New York*, No. 04-cv-7921 (RJS)(JCF), 2012 WL 4513352, at *10 (S.D.N.Y. Sept. 30, 2012); *Osterhoudt v. City of New York*, No. 10-cv-3173, 2012 WL 4481927, at *1–2 (E.D.N.Y. Sept. 27, 2012); *Mandal v. City of New York*, Nos. Civ. 1234, 02 Civ. 1367, 2007 WL 3376897, at *2 (S.D.N.Y. Nov. 13, 2007); *MacNamara v. City of New York* , No. 04-cv-9216, 2007 WL 3196295, at *1 (S.D.N.Y. Oct. 30, 2007).

57.     The pattern of conduct by which Plaintiffs' constitutional rights were violated was carried out across New York City by members of the NYPD during the protests arising from the killing of George Floyd by a police officer in Minneapolis, Minnesota.

58.     As an example, on June 2, 2020 at approximately 7:49 pm (the same date and approximately the same time as Plaintiffs were attacked), Zuleyka Morales observed officers using force against protestors in the vicinity of West Street and Morris Street in lower Manhattan.

59.     When Ms. Morales began to record the incident with her cell phone, she was attacked from behind by a uniformed NYPD officer and thrown to the ground.

60.     Despite informing a supervising officer that she was an essential worker en route to work, the officers repeatedly struck her head against the sidewalk and arrested her for violating the Curfew Orders.

61.     Another example occurred on May 30, 2020.  Rayne Valentine, an essential worker, was walking to a subway station near the corner of Flatbush and Church Avenues in Brooklyn when he observed a group of NYPD officers using physical force against another man.

62.     As Mr. Valentine was recording the incident, an officer approached him and ordered him to "Get back".

63.     Despite the fact that Mr. Valentine was complying with the order to get back, the officer charged at him, pushed him to the ground and repeatedly struck and kicked him; other officers at the scene joined in the assault before leaving the scene without making an arrest.

10

64.    Finally, on May 29, 2020, Dounya Zayer was attempting to film NYPD actions against protestors in Brooklyn.

65.    A uniformed officer, observing Zayer's attempt to record the police action, knocked the phone from her hand, cursed at her and knocked her to the ground, causing a concussion.

66.    It is evident from these and other examples that the assaultive conduct by NYPD officers and condoned by Defendant NYC is premised solely on the victims' attempt to record police action.

### FIRST CLAIM
(§1983 - FALSE ARREST- KIYEE)

67.    Pursuant to Rule 10(c), Plaintiffs repeat and reallege each and every allegation of paragraphs 1 through 66 of the Complaint as if incorporated and reiterated herein.

68.    By arresting Plaintiff KIYEE without legal authority, Defendants O'HARE, SGT LNU, DONES and CONNOR, individually and acting together, violated Plaintiff's rights under the Fourth, Eighth and Fourteenth Amendments of the United States Constitution.

69.    By reason thereof, Defendants O'HARE, SGT LNU, DONES and CONNOR, violated 42 U.S.C. §1983 and caused Plaintiff to suffer physical injuries, emotional distress, mental anguish, economic damages and the loss of her constitutional rights.

### SECOND CLAIM
(§1983 - FALSE ARREST- KYE)

70.    Pursuant to Rule 10(c), Plaintiffs repeat and reallege each and every

allegation of paragraphs 1 through 69 of the Complaint as if incorporated and reiterated herein.

71.     By arresting Plaintiff KYE without legal authority, Defendants DONES, CHEUNG, SHOULDIS, SGT LNU, AMBRECHT, CAREY and DOE, individually and acting together, violated Plaintiff's rights under the Fourth, Eighth and Fourteenth Amendments of the United States Constitution.

72.     By reason thereof, Defendants DONES, CHEUNG, SHOULDIS, SGT LNU, AMBRECHT, CAREY and DOE, violated 42 U.S.C. §1983 and caused Plaintiff to suffer physical injuries, emotional distress, mental anguish, economic damages and the loss of his constitutional rights.

**THIRD CLAIM**
(§1983 - EXCESSIVE FORCE - KIYEE)

73.     Pursuant to Rule 10(c), Plaintiffs repeat and reallege each and every allegation of paragraphs 1 through 72 of the Complaint as if incorporated and reiterated herein.

74.     By slamming Plaintiff KIYEE against the building wall, pinning his weight against her body and legs and pulling her arms behind her back to place her in handcuffs without legal cause or justification, Defendants O'HARE, DONES and CONNOR subjected Plaintiff KIYEE to the use of excessive force in the performance of their police duties in violation of the Fourteenth Amendment of the United States Constitution.  Specifically, the right to be free from the use of excessive police force under color of law.

75.     By reason thereof, Defendant O'HARE, DONES and CONNOR caused

Plaintiff KIYEE to suffer physical injuries, emotional distress and the loss of her constitutional rights.

**FOURTH CLAIM**
(§1983 - EXCESSIVE FORCE - KYE)

76.     Pursuant to Rule 10(c), Plaintiff repeats and realleges each and every allegation of paragraphs 1 through 75 of the Complaint as if incorporated and reiterated herein.

77.     By slamming Plaintiff KYE to the ground and by subjecting him to violent blows about the torso, legs and head, including by striking him in the head with a metal baton, Defendants DONES, CHEUNG, SHOULDIS, SGT LNU, CAREY, AMBRECHT and DOE, subjected Plaintiff KYE to the use of excessive force in the performance of their police duties in violation of the Fourteenth Amendment of the United States Constitution.  Specifically, the right to be free from the use of excessive police force under color of law.

78.     By reason thereof, Defendants DONES, CHEUNG, SHOULDIS, SGT LNU, CAREY, AMBRECHT and DOE caused Plaintiff KYE to suffer physical injuries, emotional distress, mental anguish and the loss of his constitutional rights.

**FIFTH CLAIM**
(§1983 - FIRST AMENDMENT RETALIATION - KYEE and KYE)

79.     Pursuant to Rule 10(c), Plaintiffs repeat and reallege each and every allegation of paragraphs 1 through 78 of the Complaint as if incorporated and reiterated herein.

80.     Defendants DONES, SGT LNU, CHEUNG, SHOULDIS, CAREY, AMBRECHT,  and DOE confronted and attacked both Plaintiffs to prevent them from

exercising their rights under the First and Fourteenth Amendments of the United States Constitution, specifically, the right to record the police action, first against the unknown Black male and then against Plaintiff KYE.

81.    The unlawful infringement on Plaintiffs' constitutional rights was designed to chill, and would so chill, Plaintiffs and other persons from continuing to observe or record instances of official police action.

82.    As such, and while acting under color of law, Defendants DONES, SGT LNU, CHEUNG, SHOULDIS, CAREY, AMBRECHT, and DOE, intentionally interfered with and prevented Plaintiffs from exercising their rights under the First and Fourteenth Amendments to the United States Constitution.

83.    By reason thereof, Defendants DONES, SGT LNU, CHEUNG, SHOULDIS, CAREY, AMBRECHT, and DOE violated 42 U.S.C. §1983 and caused Plaintiffs to suffer physical injuries, emotional distress, mental anguish and the loss of their constitutional rights.

**SIXTH CLAIM**
(§1983 - EQUAL PROTECTION - KIYEE and KYE)

84.    Pursuant to Rule 10(c), Plaintiffs repeat and reallege each and every allegation of paragraphs 1 through 83 of the Complaint as if incorporated and reiterated herein.

85.    In stark contrast to the manner in which the two Black Plaintiffs were treated when attempting to exercise their constitutional rights by recording police activity, Defendants neither used force nor arrested the White male who was recording the police action against Plaintiffs.

86.    Whereas the Black Plaintiffs were subjected to excessive force and arrest, the White male was approached by Defendant SGT LNU and spoken to in a courteous manner and politely directed to leave the area.

87.    The difference in treatment of the Black Plaintiffs and the White male, attributable only to the skin color of the persons engaged in identical conduct, constituted a violation of the Equal Protection Clause of the Fourteenth Amendment of the United States Constitution.

88.    By reason thereof, Defendant SGT LNU and other Defendants, caused Plaintiffs to suffer physical injuries, emotional distress, mental aguish and the loss of their constitutional rights.

**SEVENTH CLAIM**
(STATE - FALSE ARREST - KIYEE)

89.    Pursuant to Rule 10(c), Plaintiffs repeat and reallege each and every allegation of paragraphs 1 through 88 of the Complaint as if incorporated and reiterated herein.

90.    Plaintiff KIYEE was detained and arrested without her consent and without probable cause.

91.    By reason thereof, Defendants O'HARE, DONES and CONNOR caused Plaintiff to suffer physical injuries, emotional distress, mental anguish and the loss of her rights under New York law.

92.    Because Defendants O'HARE, DONES and CONNOR acted within the scope of their duties as members of the NYPD, Defendant NYC is also liable under this claim based on a theory of *respondeat superior*.

**EIGHTH CLAIM**
(STATE - FALSE ARREST - KYE)

93.    Pursuant to Rule 10(c), Plaintiffs repeat and reallege each and every allegation of paragraphs 1 through 92 of the Complaint as if incorporated and reiterated herein.

94.    Plaintiff KYE was detained and arrested without his consent and without probable cause.

95.    By reason thereof, Defendants DONES, CHEUNG, SHOULDIS, SGT LNU, AMBRECHT, CAREY and DOE caused Plaintiff to suffer physical injuries, emotional distress, mental anguish and the loss of his rights under New York law.

96.    Because Defendants DONES, CHEUNG, SHOULDIS, SGT LNU, AMBRECHT, CAREY and DOE acted within the scope of their duties as members of the NYPD, Defendant NYC is also liable under this claim based on a theory of *respondeat superior*.

**NINTH CLAIM**
(STATE - EXCESSIVE FORCE - KIYEE)

97.    Pursuant to Rule 10(c), Plaintiffs repeat and reallege each and every allegation of paragraphs 1 through 96 of the Complaint as if incorporated and reiterated herein.

98.    By slamming Plaintiff KIYEE against the building wall, pinning his weight against her body and legs and pulling her arms behind her back to place her in handcuffs without legal cause or justification, Defendants O'HARE, DONES and CONNOR subjected Plaintiff KIYEE to the use of excessive force in the performance of

16

their police duties.

99.   By reason thereof, Defendants O'HARE, DONES and CONNOR caused Plaintiff KIYEE to suffer physical injuries, emotional distress and the loss of her rights under New York law.

100.   Because Defendants O'HARE, DONES and CONNOR acted within the scope of their duties as members of the NYPD, Defendant NYC is also liable under this claim based on a theory of *respondeat superior*.

## TENTH CLAIM
### (STATE - EXCESSIVE FORCE - KYE)

101.   Pursuant to Rule 10(c), Plaintiffs repeat and reallege each and every allegation of paragraphs 1 through 100 of the Complaint as if incorporated and reiterated herein.

102.   By slamming Plaintiff KYE to the ground and by subjecting him to violent blows about the torso, legs and head, including by striking him in the head with a metal baton, Defendants DONES, CHEUNG, SHOULDIS, SGT LNU, AMBRECHT, CAREY and DOE subjected Plaintiff KYE to the use of excessive force in the performance of their police duties.

103.   By reason thereof, Defendants DONES, CHEUNG, SHOULDIS, SGT LNU, AMBRECHT, CAREY and DOE, caused Plaintiff KYE to suffer physical injuries, emotional distress, mental anguish and the loss of his rights under New York law.

104.   Because Defendants DONES, CHEUNG, SHOULDIS, SGT LNU, AMBRECHT, CAREY and DOE acted within the scope of their duties as members of the NYPD, Defendant NYC is also liable under this claim based on a theory of

17

*respondeat superior*.

## ELEVENTH CLAIM
(STATE CONSTITUTION - FREE SPEECH RETALIATION - KYE and KIYEE)

105.    Pursuant to Rule 10(c), Plaintiffs repeat and reallege each and every allegation of paragraphs 1 through 104 of the Complaint as if incorporated and reiterated herein.

106.    Defendants DONES, SGT LNU, CHEUNG, SHOULDIS, CAREY, AMBRECHT, and DOE, confronted and attacked both Plaintiffs to prevent them from exercising their State constitutionally protected rights, specifically the recording of police action, first against the unknown Black male and then against Plaintiff KYE.

107.    The unlawful infringement on Plaintiffs' State constitutional rights was designed to chill, and would so chill, Plaintiffs and other persons from continuing to observe or record instances of official police action.

108.    As such, and while acting under color of law, Defendants DONES, SGT LNU, CHEUNG, SHOULDIS, CAREY, AMBRECHT, and DOE, intentionally interfered with and prevented Plaintiffs from exercising their rights under Article 1, §8 of the New York State Constitution.

109.    By reason thereof, Defendants DONES, SGT LNU, CHEUNG, SHOULDIS, CAREY, AMBRECHT, and DOE violated Plaintiffs' State constitutional rights and caused Plaintiffs to suffer physical injuries, emotional distress, mental anguish and the loss of their constitutional rights.

110.    Because Defendants DONES, SGT LNU, CHEUNG, SHOULDIS, CAREY, AMBRECHT, and DOE acted within the scope of their duties as members of the NYPD,

Defendant NYC is also liable under this claim based on a theory of *respondeat superior*.

## TWELFTH CLAIM
### (MONELL CLAIM - KIYEE and KYE)

111.     Pursuant to Rule 10(c), Plaintiffs repeat and reallege each and every allegation of paragraphs 1 through 110 of the Complaint as if incorporated and reiterated herein.

112.     Defendant NYC and the NYPD had a duty to competently and sufficiently train the individual Defendants in the protection of the constitutional rights of Plaintiffs under the Fourteenth Amendment of the United States Constitution and Article 1, §§ 8, 11 and 12 of the Constitution of the State of New York.

113.     In addition, Defendant NYC and the NYPD had the duty to competently and sufficiently train and supervise the individual defendants to conform their conduct to a standard, established by law, for the protection of citizens, such as Plaintiffs, against unreasonable risk of harm by conducting themselves in such a manner as not to intentionally, wantonly, and/or negligently inflict injuries to citizens, such as the Plaintiffs herein.

114.     Defendant NYC and the NYPD, its agents, servants and employees, were negligent in failing to afford the individual defendants the proper and special training, supervision and discipline necessary for the investigation and prosecution of persons, such that the conduct of the individual Defendants herein would not occur.

115.     Specifically, Defendant NYC and the NYPD failed to properly train and supervise its member police officers in the constitutional rights of its citizenry to record

police activity as long as such recording does not interfere with official police action. Instead, Defendant NYC and the NYPD, have condoned the assault and arrest of persons who attempt to lawfully record such activity.

116.    As a result it has become the pervasive custom and practice of police officers within the NYPD to assault and arrest individuals who, though not interfering with official police action, are recording or attempting to record such activity. The individual police officers and Defendant NYC and the NYPD benefit from this unlawful conduct by preventing the potential exposure of the use of excessive force.  Moreover, the many instances of such unlawful conduct creates an atmosphere whereby the constitutional rights of others who might also attempt to record police activity are chilled.

117.    By reason thereof, Defendant NYC and the NYPD violated  42 U.S.C. §1983 and caused Plaintiffs to suffer physical injuries, emotional distress, mental anguish, economic damages and the loss of their constitutional rights.

## THIRTEENTH CLAIM
### (MONELL CLAIM - KIYEE)

118.    Pursuant to Rule 10(c), Plaintiffs repeat and reallege each and every allegation of paragraphs 1 through 117 of the Complaint as if incorporated and reiterated herein.

119.    Upon information and belief, at the time of the assault and arrest of Plaintiffs, Defendant O'HARE was a high ranking member of the NYPD and had the authority to set policy and procedure within the confines of the 6th Precinct and other parts of New York County.

120.    By using unwarranted physical force against Plaintiff KIYEE and

commanding her arrest without legal justification or even an inquiry into what had

occurred prior to issuing that unlawful order, Defendant O'HARE violated Plaintiff

KIYEE's constitutional rights.

121.   In so doing, Defendant O'HARE was effectively creating a policy and

procedure for the individual Defendants and other patrol officers under his direct

command to emulate his conduct in the utilization of excessive force and arrest without

probable cause.

122.   By reason thereof, Defendant NYC, through its employee Defendant

O'HARE, violated  42 U.S.C. §1983 and caused Plaintiff KIYEE to suffer physical

injuries, emotional distress, mental anguish, economic damages and the loss of her

constitutional rights.

**FOURTEENTH CLAIM**
(VIOLATION OF EXECUTIVE ORDER - KIYEE and KYE)

123.   Pursuant to Rule 10(c), Plaintiffs repeat and reallege each and every

allegation of paragraphs 1 through 122 of the Complaint as if incorporated and

reiterated herein.

124.   On June 2, 2020, pursuant to Executive Orders 118 and 119, a curfew

was established in New York City and the failure to comply with the curfew "shall result

in an order to" disperse by the police or other law enforcement agents.

125.   On June 2, 2020, the NYPD issued internal instructions that all officers

were required to "issue reminders to anyone observed violating the curfew that they are

not allowed in public ... [and to] direct them to return to their homes ... Enforcement will

only be taken after several warnings are issued and the violator is refusing to comply."

126.    By arresting both Plaintiffs without issuing an order to disperse and by taking enforcement action without the issuance of several warnings, the individual named Defendants violated the terms of the Executive Order as well as the internal instructions promulgated for the enforcement of said order.

127.    As such, and while acting under color of law, all the individually named Defendants intentionally arrested Plaintiffs KIYEE and KYE in violation of the law then in effect within New York City.

128.    By reason thereof, all the individually named Defendants violated Plaintiffs' rights under the laws of the City of New York and caused Plaintiffs to suffer physical injuries, emotional distress, mental anguish.

129.    Because the individually named Defendants acted within the scope of their duties as members of the NYPD, Defendant NYC is also liable under this claim based on a theory of *respondeat superior*.

## DEMAND FOR A JURY TRIAL

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiff hereby demands a jury trial of all issues capable of being determined by a jury.

**WHEREFORE**, the Plaintiff demands judgment against Defendants as follows:

i)      On the first claim, actual and punitive damages in an amount to be determined at trial;

ii)     On the second claim, actual and punitive damages in an amount to be determined at trial;

iii)    On the third claim, actual and punitive damages in an amount  to be determined at trial;

iv)     On the fourth claim, actual and punitive damages in an amount  to be determined at trial;

v)      On the fifth claim, actual and punitive damages in an amount  to be

determined at trial;

vi)    On the sixth claim, actual and punitive damages in an amount to be determined at trial;

vii)    On the seventh claim, actual and punitive damages in an amount to be determined at trial;

viii)    On the eighth claim, actual and punitive damages in an amount to be determined at trial;

ix)    On the ninth claim, actual and punitive damages in an amount to be determined at trial;

x)    On the tenth claim, actual and punitive damages in an amount to be determined at trial;

xi)    On the eleventh claim, actual and punitive damages in an amount to be determined at trial;

xii)    On the twelfth claim, actual and punitive damages in an amount to be determined at trial;

xiii)    On the thirteenth claim, actual and punitive damages in an amount to be determined at trial;

xiv)    On the fourteenth claim, actual and punitive damages in an amount to be determined at trial;

xv)    Statutory attorney's fees and disbursements pursuant to 42 U.S.C. §1988, and costs of this action; and

xvi)    Such other relief as the Court deems just and proper.

Dated:    New York, New York
April 26, 2021

Goldberg & Allen, LLP
Attorneys for Plaintiff

Jay K. Goldberg /s/

By:    _____
Jay K. Goldberg [JG-1294]
49 West 37th Street, 7th Floor
New York, New York 10018
Office: (212) 766-3366
Cell:    (917) 922-7408

23