JAY K. GOLDBERG [JG-1294]
GOLDBERG & ALLEN, LLP
49 West 37th Street, 7th Floor
New York, New York  10018
212-766-3366

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
--------------------------------------------------------------------------------X

KIYEE KYE,                                                          21 CV 3660 [PKC][SN]

                                        Plaintiff

                                                                    **THIRD AMENDED**
                                                                    **COMPLAINT**
                                                                    **PLAINTIFF**
                      - against -                                   **DEMANDS A TRIAL BY**
                                                                    **JURY**

CITY OF NEW YORK, P.O. JONATHAN DONES, SHIELD 27390,
SERGEANT MARTIN MALONEY, P.O. KACHUN CHEUNG,
SHIELD 5890, P.O. MAUREEN CAREY, SHIELD 20116,
P.O. JAMES SHOULDIS, SHIELD16502, P.O. DANIELLE
AMBRECHT, SHIELD 17611, P.O. MICHAEL COLLARINI,
P.O. MAYKO MATOS,
                                        Defendants.
--------------------------------------------------------------------------------X

### PARTIES, JURISDICTION and VENUE

1.      Plaintiff, KIYEE KYE, is a 38 year-old Black male, who at all times

relevant to this action was a resident of New York and a citizen of the United States.

2.      Defendant, City of New York ("NYC"), is a municipality within the State of

New York, which includes New York County.  NYC maintains a police department, the

New York City Police Department ("NYPD"), which is an agency of the municipality.

3.      Upon information and belief, Defendant P.O. JONATHAN DONES,

SHIELD 27390, was at all relevant times a police officer with the NYPD assigned to the

6th Precinct.  All actions by DONES complained of herein were taken in the course of

1

his employment and under color of law.  DONES is being sued in both his individual and official capacities.

       4.       Upon information and belief, Defendant P.O. KACHUN CHEUNG, SHIELD 5890, was at all relevant times a police officer with the NYPD assigned to the 6th Precinct.  All actions by CHEUNG complained of herein were taken in the course of his employment and under color of law.  CHEUNG is being sued in both his individual and official capacities.

       5.       Upon information and belief, Defendant SERGEANT MICHAEL MALONEY,  was at all relevant times a uniformed police officer with the NYPD assigned to the 6TH Precinct in a supervisory capacity.  All actions by MALONEY complained of herein were taken in the course of his employment and under color of law.  MALONEY is being sued in both his individual and official capacities.

       6.       Upon information and belief, Defendant P.O. MAUREEN CAREY, SHIELD 20116, was at all relevant times a police officer with the NYPD assigned to the 6th Precinct.  All actions by CAREY complained of herein were taken in the course of her employment and under color of law.  CAREY is being sued in both her individual and official capacities.

       7.       Upon information and belief, Defendant P.O. JAMES SHOULDIS, SHIELD 16502, was at all relevant times a police officer with the NYPD assigned to the 6th Precinct.  All actions by SHOULDIS complained of herein were taken in the course of his employment and under color of law.  SHOULDIS is being sued in both his individual and official capacities.

       8.       Upon information and belief, Defendant P.O. DANIELLE AMBRECHT,

2

SHIELD 17611, was at all relevant times a police officer with the NYPD assigned to the 6th Precinct.  All actions by AMBRECHT complained of herein were taken in the course of her employment and under color of law.  AMBRECHT is being sued in both her individual and official capacities.

9.      Upon information and belief, DEFENDANT P.O. MICHAEL COLLARINI, was at all relevant times a police officer with the NYPD assigned to the 6th Precinct.  All actions by COLLARINI complained of herein were taken in the course of his employment and under color of law.  COLLARINI is being sued in both his individual and official capacities.

10.      Upon information and belief, DEFENDANT P.O. MAYKO MATOS, was at all relevant times a police officer with the NYPD assigned to the 6th Precinct.  All actions by MATOS complained of herein were taken in the course of his employment and under color of law.  MATOS is being sued in both his individual and official capacities.

11.      Original jurisdiction of this Court is founded upon 28 U.S.C. §1331, et seq., specifically 28 U.S.C. § 1343.

12.      Venue is properly laid in this District pursuant to 28 U.S.C. §1391(b).

13.      The instant action is commenced within three years of the date of accrual of all claims and one year and ninety days of the date of accrual for all State claims.

**FACTS GIVING RISE TO THE CLAIMS**

14.     On June 1, 2020, pursuant to Emergency Executive Order 117, New York City Mayor Bill de Blasio, imposed a curfew within New York City between the hours of 11:00 pm on June 1 and 5:00 am on June 2, 2020.

15.     On June 2, 2020, pursuant to Emergency Executive Orders 118 and 119, (the "Curfew Orders") the prior order was expanded to cover the hours of 8:00 pm to 5:00 am each day until June 8, 2020.

16.     Pursuant to the Curfew Orders individuals traveling "to and from essential work" were specifically exempt from the Curfew Orders.

17.     Pursuant to the Curfew Orders, failure to comply with the curfew would result in the issuance of an order to disperse; individuals who knowingly violated the orders could be charged with a Class B misdemeanor under New York City's administrative code.

18.     Upon information and belief, the significant change in the starting time of the curfew – from 11:00 pm to 8:00 pm – was a factor in requiring both the issuance of an order to disperse and that the violation be knowing before an arrest could be made.

19.     On June 2, 2020, the NYPD issued internal instructions that all officers were required to "issue reminders to anyone observed violating the curfew that they are not allowed in public ... [and to] direct them to return to their homes ... Enforcement will only be taken after several warnings are issued and the violator is refusing to comply."

20.     On June 2, 2020, shortly after 8:00 pm, Plaintiff, together with his cousin, Jessica Kiyee, an essential food worker, was walking on Broadway in lower Manhattan towards the Broadway-Lafayette train station.

4

21.     Plaintiff, also categorized as an essential worker, though not working that date, had gone to Manhattan to escort his cousin to the home they shared in Jamaica, Queens.

22.     At that time, Plaintiff observed a group of officers, believed to include some of the defendants, chase a young Black male and tackle him to the sidewalk on Bleecker Street, about half a block away.

23.     Plaintiff was unaware of what precipitated this police action but, out of concern that a number of officers might resort to excessive force, he instructed Ms. Kiyee to record the police actions on a cell phone.

24.     As Plaintiff and Ms. Kiyee remained at a safe distance from the officers engaged with the unknown Black male, MALONEY and one of the other named defendants, pointed in Plaintiff's direction and directed other officers to confront Plaintiff and Ms. Kiyee.

25.     CHEUNG, SHOULDIS, AMBRECHT, and one other defendant, walked towards Plaintiff and, while Plaintiff was still over 50 feet from the group of officers engaged with the young Black male, shouted orders to Plaintiff and Ms. Kiyee to move back.

26.     Both Plaintiff and Ms. Kiyee complied with the orders and took steps back.

27.     As Plaintiff stepped back, he raised his hands over his head to indicate that he presented no danger to the officers.

28.     The defendants who confronted Plaintiff and Ms. Kiyee failed to comply with the Curfew Orders or the NYPD instructions that several warnings to leave the area because the curfew was in effect be given prior to any enforcement action.

5

29.     The defendants who confronted Plaintiff and Ms. Kiyee failed to inquire whether either was an essential worker.

30.     Instead, without warning or provocation, Defendants CHEUNG, SHOULDIS, AMBRECHT and one other defendant, grabbed Plaintiff and, subsequently joined by MALONEY, DONES, COLLARINI, CAREY and MATOS, tackled Plaintiff to the ground.

31.     Plaintiff was beaten by multiple Defendants including, without limitation, DONES, CAREY, SHOULDIS, MALONEY, CHEUNG, AMBRECHT, COLLARINI, and MATOS about the torso and legs, his arms were violently twisted behind him, and his head struck with a police baton or other blunt instrument.

32.     The cell phone with which Ms. Kiyee was recording these acts was knocked from her hand by one of the defendant officers; she, too, was subsequently subjected to excessive force and false arrest.

33.     After being handcuffed, and while face down on the ground, Plaintiff was punched in the back multiple times by defendants, believed to be COLLARINI and SHOULDIS.

34.     A white male whose name is known to the parties, was in the vicinity and recorded the entire incident. [1] After Plaintiff was in custody, this male was approached by MALONEY and politely directed to leave the area.

35.     Similarly, a second unknown white male stood nearby and apparently memorialized what was occurring with a camera.  He, too, was approached by an

---

[1] This recording, and the identity of the white male, was disclosed by Defendants in discovery.

officer, believed to be MALONEY, and directed to leave the area.

36.     Plaintiff was transported to the 6th Precinct where he was given a summons for curfew violation and released at approximately midnight.

37.     Plaintiff suffered physical injuries as a result of the assault by the defendant officers, including, without limitation, bruising to his entire body and long term pain to his back and leg and recurrent periodic dizziness.

38.     As a result of his injuries, Plaintiff was unable to work for approximately one month.

39.     Plaintiff suffered emotional distress and mental anguish manifesting in, among other things, loss of sleep and loss of appetite.

40.     The summons and all charges against Plaintiff were dismissed on motion of the District Attorney of New York County without a court appearance.

41.     The assault and unlawful arrest of Plaintiff was consistent with a pervasive course of conduct by, and the policies and practice, of the NYPD and Defendant NYC.

42.     The assault and unlawful arrest of Plaintiff was the result of the failure to train members of the NYPD on the constitutional rights of civilians to observe and record police actions.

43.     Since at least 2003, based on public reports, lawsuits and complaints, Defendant NYC was on notice that members of the NYPD were not properly trained or supervised in protecting the constitutional rights of civilians.

44.     Among the constitutional rights routinely violated by members of the NYPD were the First and Fourteenth Amendments to the United States Constitution, as well as the concurrent State constitutional rights, to observe and record officers

7

engaged in police activity.

45.    Despite knowledge of such conduct, Defendant NYC failed to discipline the officers involved in said violations and failed to institute and enforce policies to prevent the recurrence of such conduct.

46.    The failure to address these patterns of conduct constitute a policy or practice of Defendant NYC to permit and encourage the use of excessive force and other illegal conduct to suppress the constitutionally protected First Amendment and concurrent State constitutional rights of civilians.

47.    In an October 2015 report the New York City Department of Investigation concluded that the training of police officers had "no discernable reference to managing interactions, facilitating First Amendment rights, and minimizing the use of force" and that "the NYPD frequently failed to impose discipline even when provided with evidence of excessive force."

48.    The failure to properly train members of the NYPD on the constitutional and statutory rights of civilians has manifested in improper arrests and use of force during times of mass civil protests when, as occurred here, the police were mobilized to assure order but instead used that mandate as an excuse to violate the rights of civilians.

49.    Following the 2003 Iraq War protests, the 2004 Republican National Convention protests and the 2011 Occupy Wall Street protests, and the 2020 protests arising from the murder of George Floyd, numerous lawsuits were filed which detailed the actions by the NYPD which interfered with the protected First Amendment rights of the protestors and journalists covering the protests.

50.    Included among these lawsuits is <u>People of the State of New York v. City of New York</u>, 21 CV 322, pending in the Southern District of New York.  That suit, brought by Attorney General Letitia James, seeks declaratory and injunctive relief against the NYPD for its pattern of conduct in the use of excessive force and false arrests against civilians exercising their First Amendment rights to protest and to observe or record police activity.  As a factual predicate, that suit refers in great detail to numerous instances of such unlawful conduct by the NYPD, some of which are cited in the following paragraphs.

51.    On May 29, 2020, Brian Anderson was observing a protest in the vicinity of the 79th Precinct in Kings County.  Mr. Anderson was present when he observed a large group of officers charge into the protestors, ordering all to disperse.

52.    As Mr. Anderson walked away pursuant to orders of the police, NYPD officers knocked him to the ground and repeatedly struck him with batons.  Mr. Anderson was subjected to additional assaultive acts including having his head slammed into the pavement.  Mr. Anderson was subsequently handcuffed and detained before eventually being released without charges.

53.    In addition, there were the numerous arrests of clearly identified Legal Observers who were sanctioned by the City and tasked with monitoring the protests and observing police activity.

54.    Despite being exempt from the Curfew Orders, on June 4, 2020, NYPD officers in the Bronx detained twelve properly credentialed Legal Observers while they were performing their duties by trying to observe police actions in relation to civilian protestors.  Some Legal Observers were physically hindered by the police from being

able to record details of the police activity.

55.     On May 30, 2020.  Rayne Valentine, an essential worker, was walking to a subway station near the corner of Flatbush and Church Avenues in Brooklyn when he observed a group of NYPD officers using physical force against another man.

56.     As Mr. Valentine was recording the incident, an officer approached him and ordered him to "Get back".

57.     Despite the fact that Mr. Valentine was complying with the order to get back, the officer charged at him, pushed him to the ground and repeatedly struck and kicked him; other officers at the scene joined in the assault before leaving the scene without making an arrest.

58.     Finally, on May 29, 2020, Dounya Zayer was attempting to film NYPD actions against protestors in Brooklyn.

59.     A uniformed officer, observing Zayer's attempt to record the police action, knocked the phone from her hand, cursed at her and knocked her to the ground, causing a concussion.

60.     It is evident from these and other examples that the assaultive conduct by NYPD officers and condoned by Defendant NYC is premised solely on the victims' attempt to observe or record police action.

61.     In recognition of the long-standing failure by law enforcement to respect the individual's constitutional right to observe or record police action, the State of New York enacted legislation, Civil Rights Law §79-p, which became effective on July 14, 2020, directly addressing this issue.

62.     According to the Sponsor Memo included in the legislative history as

justification for the legislation:

> there is a widespread, continuing pattern of law enforcement
> officers ordering onlookers to cease video or audio recording
> of their official behavior and actions while in the line of duty.
> More importantly, those who do not comply with police officers'
> requests to cease video or audio recording, which is their
> constitutional right, are harassed, detained and even
> arrested by the police.

63.     The law establishes a right to record law enforcement activity. Civ Rts L
§ 79-p.2.  "Record" is broadly defined as including "to capture ... by way of written notes
*or observations*." Civ Rts L §79-p.1[c] [emphasis supplied].  Further, the statute
provides for a private cause of action for a claim of unlawful interference with the
exercise of that right.  Civ Rts L §79-p.3.

64.     It is clear that the legislative intent was to recognize a pervasive custom
and practice of law enforcement and the need to specifically "ensure that New Yorkers
are allowed to exercise their constitutional right and shall not be intimidated by law
enforcement or unfairly arrested" [Sponsor Memo] and that such protection was needed
for both recording and observing police activity.

65.     Similarly, in an effort to specifically address the same problem in New
York City, the New York City Council, passed identical legislation, targeting the
pervasive custom and practice of unlawful conduct by the NYPD.

66.     New York City Administrative Code §14-189, which became effective on
August 14, 2020, establishes a local statutory right to observe and record police activity.

11

The language of the act, closely tracks that of Civ Rts L §79-p and defines "record" as including "to capture...by way of written notes *or observations*." [emphasis supplied]. NYC Admin Code §14-189.a.  In addition, the act created a private right of action specifically stating that it was in addition to any existing remedies under 42 USC §1983, and any other Federal constitutional, State law or constitutional, or local remedies. NYC Admin Code §14-189.d.

67.     It is clear that the legislative intent behind NYC Admin Code §14-189, like Civ Rts L §79-p, was to recognize and address the pervasive custom and practice of the NYPD to unlawfully interfere with the constitutional rights of civilians to observe or record police activity.  It is precisely this custom and practice that led to the assault and arrest of Plaintiff.

**FIRST CLAIM**
(§1983 - FALSE ARREST - NO PROBABLE CAUSE)

68.     Pursuant to Rule 10(c), Plaintiff repeats and realleges each and every allegation of paragraphs 1 through 67 of the Third Amended Complaint as if incorporated and reiterated herein.

69.     Defendants failed to issue the required warnings pursuant to the Curfew Orders and NYPD procedures; further, Defendants failed to make inquiry whether Plaintiff was an essential worker.  Under these circumstances and the fact that curfew in effect on June 2 began three hours earlier than the curfew in effect on June 1, it was reasonable to conclude that Plaintiff was not in knowing violation of the curfew – a predicate for arrest.

70.     By arresting Plaintiff without his consent or probable cause, Defendants

DONES, CHEUNG, SHOULDIS, MALONEY, AMBRECHT, CAREY, COLLARINI, and

MATOS individually and acting together, violated Plaintiff's rights under the Fourth and

Fourteenth Amendments of the United States Constitution.

71.     By reason thereof, Defendants DONES, CHEUNG, SHOULDIS,

MALONEY, AMBRECHT, CAREY, COLLARINI, and MATOS violated 42 U.S.C. §1983

and caused Plaintiff to suffer physical injuries, emotional distress, mental anguish,

economic damages and the loss of his constitutional rights.

**SECOND CLAIM**
**(§1983 - FALSE ARREST - FIRST AMENDMENT RETALIATION)**

72.     Pursuant to Rule 10(c), Plaintiff repeats and realleges each and every

allegation of paragraphs 1 through 71 of the Third Amended Complaint as if

incorporated and reiterated herein.

73.     Defendants DONES, CHEUNG, SHOULDIS, MALONEY, AMBRECHT,

CAREY, COLLARINI, and MATOS confronted and attacked Plaintiff [and Ms. Kiyee] to

prevent him from exercising his rights under the First and Fourteenth Amendments of

the United States Constitution, specifically, the right to observe or record the police

action.

74.     The unlawful infringement on Plaintiff's constitutional rights was designed

to chill, and would so chill, Plaintiff and other persons from continuing to observe or

record instances of official police action.

75.     As such, and while acting under color of law, Defendants DONES,

CHEUNG, SHOULDIS, MALONEY, AMBRECHT, CAREY, COLLARINI, and MATOS

intentionally interfered with and prevented Plaintiff from exercising his rights under the

First and Fourteenth Amendments to the United States Constitution.

76.     By reason thereof, Defendants DONES, CHEUNG, SHOULDIS,

MALONEY, AMBRECHT, CAREY, COLLARINI, and MATOS violated 42 U.S.C. §1983

and caused Plaintiff to suffer physical injuries, emotional distress, mental anguish,

economic damages and the loss of his constitutional rights.

**THIRD CLAIM**
(§1983 - EXCESSIVE FORCE)

77.     Pursuant to Rule 10(c), Plaintiff repeats and realleges each and every

allegation of paragraphs 1 through 76 of the Third Amended Complaint as if

incorporated and reiterated herein.

78.     By slamming Plaintiff KYE to the ground and by subjecting him to violent

blows about the torso, legs and head, including by striking him in the head with a blunt

instrument, while making an arrest, Defendants DONES, CHEUNG, SHOULDIS,

MALONEY, AMBRECHT, CAREY, COLLARINI, and MATOS subjected Plaintiff KYE to

the use of excessive force in the performance of their police duties in violation of the

Fourth Amendment of the United States Constitution.  Specifically, the right to be free

from the use of excessive police force under color of law.

79.     By reason thereof, Defendants DONES, CHEUNG, SHOULDIS,

MALONEY, AMBRECHT, CAREY, COLLARINI, and MATOS caused Plaintiff KYE to

suffer physical injuries, emotional distress, mental anguish, economic damages and the

loss of his constitutional rights.

**FOURTH CLAIM**
(§1983 - EQUAL PROTECTION)

80.     Pursuant to Rule 10(c), Plaintiff repeats and realleges each and every

14

allegation of paragraphs 1 through 79 of the Third Amended Complaint as if incorporated and reiterated herein.

81.     In stark contrast to the manner in which the Black Plaintiff and his Black female cousin were treated when attempting to exercise their constitutional rights to observe or record police activity, Defendants neither used force nor arrested the white males who were observing and recording the police action against Plaintiff and his cousin.

82.     Instead, the white males were approached by defendant officers, including MALONEY, spoken to in a courteous manner, and politely directed to leave the area.

83.     The difference in treatment of Plaintiff and his cousin and the white males, persons engaged in identical conduct, is attributable only to the difference in skin color and constituted a violation of the Equal Protection Clause of the Fourteenth Amendment of the United States Constitution.

84.     By reason thereof, Defendants DONES, CHEUNG, SHOULDIS, MALONEY, AMBRECHT, CAREY, COLLARINI, and MATOS caused Plaintiff to suffer physical injuries, emotional distress, mental aguish, economic damages and the loss of his constitutional rights.

**FIFTH CLAIM**
(STATE - FALSE ARREST)

85.     Pursuant to Rule 10(c), Plaintiff repeats and realleges each and every allegation of paragraphs 1 through 84 of the Third Amended Complaint as if incorporated and reiterated herein.

86.     Defendants failed to issue the required warnings pursuant to the Curfew

Orders and failed to make inquiry whether Plaintiff was an essential worker. Moreover, under these circumstances and the fact that the curfew in effect on June 2 began three hours earlier than the curfew in effect on June 1, it was reasonable to conclude that Plaintiff was not in knowing violation of the curfew, a prerequisite for arrest.

87.   Plaintiff KYE was detained and arrested without his consent and without probable cause.

88.   By reason thereof, Defendants DONES, CHEUNG, SHOULDIS, MALONEY, AMBRECHT, CAREY, COLLARINI, and MATOS caused Plaintiff to suffer physical injuries, emotional distress, mental anguish, economic damages and the loss of his rights under New York law.

89.   Because Defendants DONES, CHEUNG, SHOULDIS, MALONEY, AMBRECHT, CAREY, COLLARINI, and MATOS acted within the scope of their duties as members of the NYPD, Defendant NYC is also liable under this claim based on a theory of *respondeat superior*.

**SIXTH CLAIM**
(STATE - EXCESSIVE FORCE)

90.   Pursuant to Rule 10(c), Plaintiff repeats and realleges each and every allegation of paragraphs 1 through 89 of the Third Amended Complaint as if incorporated and reiterated herein.

91.   By slamming Plaintiff to the ground and by subjecting him to violent  blows about the torso, legs and head, including by striking him in the head with a blunt instrument, while making an arrest, Defendants DONES, CHEUNG, SHOULDIS, MALONEY, AMBRECHT, CAREY, COLLARINI, and MATOS subjected Plaintiff to the

use of excessive force in the performance of their police duties.

92.    By reason thereof, Defendants DONES, CHEUNG, SHOULDIS,

MALONEY, AMBRECHT, CAREY, COLLARINI, and MATOS caused Plaintiff to suffer

physical injuries, emotional distress, mental anguish, economic damages and the loss

of his rights under New York law.

93.    Because Defendants DONES, CHEUNG, SHOULDIS, MALONEY,

AMBRECHT, CAREY, COLLARINI, and MATOS acted within the scope of their duties

as members of the NYPD, Defendant NYC is also liable under this claim based on a

theory of *respondeat superior*.

## SEVENTH CLAIM
### (STATE CONSTITUTION - FREE SPEECH RETALIATION)

94.    Pursuant to Rule 10(c), Plaintiff repeats and realleges each and every

allegation of paragraphs 1 through 93 of the Third Amended Complaint as if

incorporated and reiterated herein.

95.    Defendants DONES, CHEUNG, SHOULDIS, MALONEY, AMBRECHT,

CAREY, COLLARINI, and MATOS confronted and attacked Plaintiff to prevent him from

exercising his State constitutionally protected rights, specifically to observe or record

police action.

96.    The unlawful infringement on Plaintiff's State constitutional rights was

designed to chill, and would so chill, Plaintiff and other persons from continuing to

observe or record instances of official police action.

97.    As such, and while acting under color of law, Defendants DONES,

CHEUNG, SHOULDIS, MALONEY, AMBRECHT, CAREY, COLLARINI, and MATOS

intentionally interfered with and prevented Plaintiff from exercising his rights under Article 1, §8 of the New York State Constitution.

98.     By reason thereof, Defendants DONES, CHEUNG, SHOULDIS, MALONEY, AMBRECHT, CAREY, COLLARINI, and MATOS violated Plaintiff's State constitutional rights and caused Plaintiff to suffer physical injuries, emotional distress, mental anguish, economic damages and the loss of his constitutional rights.

99.     Because Defendants DONES, CHEUNG, SHOULDIS, MALONEY, AMBRECHT, CAREY, COLLARINI, and MATOS acted within the scope of their duties as members of the NYPD, Defendant NYC is also liable under this claim based on a theory of *respondeat superior*.

## EIGHTH CLAIM
(MONELL CLAIM)

100.     Pursuant to Rule 10(c), Plaintiff repeats and realleges each and every allegation of paragraphs 1 through 99 of the Third Amended Complaint as if incorporated and reiterated herein.

101.     Defendant NYC and the NYPD had a duty to competently and sufficiently train the individual defendants in the protection of the constitutional rights of Plaintiffs under the Fourteenth Amendment of the United States Constitution and Article 1, §§ 8, 11 and 12 of the Constitution of the State of New York.

102.     In addition, Defendant NYC and the NYPD had the duty to competently and sufficiently train and supervise the individual defendants to conform their conduct to a standard, established by law, for the protection of citizens, such as Plaintiff, against unreasonable risk of harm by conducting themselves in such a manner as not to

intentionally, wantonly, and/or negligently inflict injuries to citizens, such as the Plaintiff herein.

103.    Defendant NYC and the NYPD, its agents, servants and employees, were negligent in failing to afford the individual defendants the proper and special training, supervision and discipline necessary for the investigation and prosecution of persons, such that the conduct of the individual defendants herein would not occur.

104.    Specifically, Defendant NYC and the NYPD failed to properly train and supervise its member police officers in the constitutional rights of its residents to observe or record police activity as long as such action does not interfere with official police action.  Instead, Defendant NYC and the NYPD, have condoned the assault and arrest of persons who attempt to lawfully observe or record such activity.

105.    As a result it has become the pervasive custom and practice of police officers within the NYPD to assault and arrest individuals who, though not interfering with official police action, are observing or recording or attempting to record such activity. The individual police officers and Defendant NYC and the NYPD benefit from this unlawful conduct by preventing the potential exposure of the use of excessive force or other unlawful conduct.  Moreover, the many instances of such unlawful conduct creates an atmosphere whereby the constitutional rights of others who might also attempt to observe or record police activity are chilled.

106.    As a result of this pervasive custom and practice, the City of New York enacted NYC Admin Code §14-189 and the State of New York enacted Civ Rts L § 79-p to ensure that the constitutional rights to observe or record police action would not be unlawfully abridged.

19

107.    Because of his unlawful assault and arrest, Plaintiff was unable to observe the police actions towards the unidentified Black male and that experience has chilled his rights to do so in the future.

108.    By reason thereof, Defendant NYC and the NYPD violated  42 U.S.C. §1983 and caused Plaintiff to suffer physical injuries, emotional distress, mental anguish, economic damages and the loss of his constitutional and statutory rights.

**NINTH CLAIM**
(VIOLATION OF EXECUTIVE ORDER)

109.    Pursuant to Rule 10(c), Plaintiff repeats and realleges each and every allegation of paragraphs 1 through 108 of the Third Amended Complaint as if incorporated and reiterated herein.

110.    By arresting Plaintiff without issuing an order to disperse and by taking enforcement action without the issuance of several warnings, DONES, CHEUNG, SHOULDIS, MALONEY, AMBRECHT, CAREY, COLLARINI, and MATOS violated the terms of the Curfew Orders as well as the internal NYPD instructions promulgated for the enforcement of said order.

111.    As such, and while acting under color of law, DONES, CHEUNG, SHOULDIS, MALONEY, AMBRECHT, CAREY, COLLARINI, and MATOS intentionally arrested Plaintiff in violation of the law then in effect within New York City.

112.    By reason thereof, DONES, CHEUNG, SHOULDIS, MALONEY, AMBRECHT, CAREY, COLLARINI, and MATOS violated Plaintiff's rights under the laws of the City of New York and caused Plaintiff to suffer physical injuries, emotional distress, economic damages and mental anguish.

113.    Because DONES, CHEUNG, SHOULDIS, MALONEY, AMBRECHT,

CAREY, COLLARINI, and MATOS acted within the scope of their duties as members of

the NYPD, Defendant NYC is also liable under this claim based on a theory of

*respondeat superior*.

## DEMAND FOR A JURY TRIAL

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiff hereby

demands a jury trial of all issues capable of being determined by a jury.

WHEREFORE, the Plaintiff demands judgment against Defendants as follows:

I)     On the first claim, actual and punitive damages in an amount to be
       determined at trial;

ii)    On the second claim, actual and punitive damages in an amount to be
       determined at trial;

iii)   On the third claim, actual and punitive damages in an amount  to be
       determined at trial;

iv)    On the fourth claim, actual and punitive damages in an amount  to be
       determined at trial;

v)     On the fifth claim, actual and punitive damages in an amount  to be
       determined at trial;

vi)    On the sixth claim, actual and punitive damages in an amount  to be
       determined at trial;

vii)   On the seventh claim, actual and punitive damages in an amount  to be
       determined at trial;

viii)  On the eighth claim, actual and punitive damages in an amount  to be
       determined at trial;

ix)    On the ninth claim, actual and punitive damages in an amount  to be
       determined at trial;

x)     Statutory attorney's fees and disbursements pursuant to 42 U.S.C. §1988,
       and costs of this action; and

xi)    Such other relief as the Court deems just and proper.

Dated:    New York, New York
         November 10, 2022

         By:      _____

Jay K. Goldberg [JG 1294]
Attorney for Plaintiff
Goldberg & Allen, LLP
49 West 37th Street, 7th Floor
New York, New York 10018
Office: (212) 766-3366
Cell:    (917) 922-7408