UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x
KIYEE KYE,

                            Plaintiff,

                                                          21-cv-3660 (PKC)
            -against-

                                                     OPINION AND ORDER

CITY OF NEW YORK, et al.,

                            Defendants.
------------------------------------------------------------x

CASTEL, U.S.D.J.

            Plaintiff Kiyee Kye brings this action against defendants Jonathan Dones, Kachun

Chueng, Michael Maloney, Maureen Carey, James Shouldis, Danielle Ambrecht, Michael

Collarini, and Mayko Matos, all officers of the New York City Police Department ("NYPD")

(the "Individual Defendants"), and the City of New York.  Kye principally claims he was

deprived of rights protected by the Constitution when he was arrested for violating a curfew

order.

            In a Third Amended Complaint, Kye asserts four claims under section 1983

against the Individual Defendants.  42 U.S.C. § 1983.  He alleges that (i) he was subjected to

false arrest in violation of the Fourth Amendment, (ii) the officers intentionally interfered with

and prevented him from exercising his First Amendment right to observe the police action in

progress, (iii) he was subjected to excessive force in violation of the Fourth Amendment, and (iv)

he was subjected to differential treatment from similarly situated white individuals in violation of

the Equal Protection Clause of the Fourteenth Amendment.  He also brings a section 1983 claim

for municipal liability against the City of New York, alleging that the First Amendment violation

was due to the City's failure to properly train and supervise them.  Additionally, the Complaint contains parallel false arrest, excessive force, and free speech retaliation claims under state law, as well as a freestanding claim for "violation of executive order."  The defendants move to dismiss all but the excessive force claims.

For reasons that will be explained, the motion to dismiss is denied as to the false arrest claims but is granted as to all other claims.

BACKGROUND

I.    Factual Background

The well-pleaded facts recounted below are taken from the Third Amended Complaint and are assumed to be true for the purpose of this motion.  In re Elevator Antitrust Litig., 502 F.3d 47, 50 (2d Cir. 2007).  (ECF 98.) ("Complaint" or "Compl.")

A.    Curfew Orders

On June 1, 2020, New York City Mayor Bill de Blasio issued Emergency Executive Order 117, imposing a city-wide curfew from 11:00 p.m. on June 1 to 5:00 a.m. on June 2, 2020.  (Compl. ¶ 14.)  This Order was followed by Emergency Executive Order 118 ("EEO 118"),[1] which imposed an earlier curfew of 8:00 p.m. on the night of June 2, 2020.  (Id. ¶ 15.)  A third order, Emergency Executive Order 119 (collectively, the "Curfew Orders"), issued on June 2, 2020, extended the 8:00 p.m. nightly curfew through June 8, 2020.  (Id.)

Apart from their dates and times, the Curfew Orders all contained similar substantive provisions.  During the hours the curfew was in effect, it was ordered that "no persons or vehicles may be in public."  EEO 118 § 2.  This broad restriction nevertheless contained several, potentially expansive carveouts:

---

[1] "Emergency Executive Order 118," Office of the Mayor, The City of New York (June 1, 2020) https://a860-gpp.nyc.gov/concern/nyc_government_publications/fn107064m?locale=en (last accessed September 15, 2023).

> This Order shall not apply to police officers, peace officers,
> firefighters, first responders and emergency medical technicians,
> individuals travelling to and from essential work and performing
> essential work, people experiencing homelessness and without
> access to a viable shelter, and individuals seeking medical
> treatment or medical supplies. "Essential work" is work performed
> by essential businesses or entities as defined or permitted by the
> Empire State Development Corporation.

Id. § 3.  The Curfew Orders also provided that "[f]ailure to comply with" a Curfew Order "shall

result in orders to disperse, and any person who knowingly violates the provisions in this Order

shall be guilty of a Class B misdemeanor."  Id. § 4.

  The Complaint alleges that on June 2, 2020, the NYPD provided internal

instructions regarding the Curfew Orders requiring officers to first "issue reminders to anyone

violating curfew that they are not allowed in public" and that "[e]nforcement will only be taken

after several warnings are issued and the violator is refusing to comply."  (Compl. ¶ 19.)

  B. Kye's Arrest

  The Complaint alleges that on June 2, 2020, shortly after 8:00 p.m., plaintiff Kye

and his cousin, Jessica Kiyee, were walking on Broadway in lower Manhattan in the direction of

the Broadway-Lafayette train station.  (Id. ¶ 20.)  Both were essential food workers, and though

Kye was not working on that day, he had gone to Manhattan to escort his cousin back to their

shared home in Jamaica, Queens.  (Id. ¶¶ 20–21.)  While heading towards the station, Kye

observed NYPD officers, including at least some of the named defendants, chase down and

tackle a young black male on Bleecker Street; this occurred approximately a half block away

from Kye and Kiyee.  (Id. ¶ 22.)  Kye instructed Kiyee to record the police actions on her cell

phone out of concern that some of the officers would use excessive force during the encounter.

(Id. ¶ 23.)

The pair remained at a distance, but Officer Maloney and another unspecified defendant pointed in their direction and directed other officers to confront them.  (Id. ¶ 24.) Officers Chueng, Shouldis, Ambrecht, and another unspecified officer approached Kye and Kiyee—who were over 50 feet from the encounter at this point—and shouted for them to move back.  (Id. ¶ 25.)  The pair complied and took steps back; as Kye stepped back, he raised his hands over his head.  (Id. ¶¶ 26–27.)  Kye alleges that, without issuing any warning, the four officers grabbed him, and with the subsequent assistance of Officers Maloney, Dones, Collarini, Carey, and Matos, tackled him to the ground.  (Id. ¶ 30.)  The Complaint further alleges that the Individual Defendants then proceeded to beat Kye about the torso and legs, twist his arms violently behind him, and strike his head with a police baton or another blunt instrument.  (Id. ¶ 31.)  Kye was handcuffed and placed face down on the ground, and he was allegedly punched repeatedly in the back "by defendants, believed to be" Officers Collarini and Shouldis.  (Id. ¶ 33.)  One of the officers knocked the cell phone that was recording the incident from Kiyee's hand, and she was subjected to force and arrested as well.  (Id. ¶ 32.)

Kye is a black male.  (Id. ¶ 1.)  At the time he was arrested, a white male was also nearby and recording the incident.  (Id. ¶ 34.)  After Kye had been taken into custody, this individual was approached by Officer Maloney and politely directed to leave the area.  (Id.)  A second white male was also nearby and documented the incident on his camera; he too was approached by "an officer, believed to be" Officer Maloney, and directed to leave the area.  (Id. ¶ 35.)

Kye was taken to the Sixth Precinct where was given a summons for curfew violation and released at approximately midnight.  (Id. ¶ 36.)  The summons and all charges against Kye were subsequently dismissed on motion of the District Attorney of New York

County without a court appearance.  (Id. ¶ 40.)  Kye suffered physical injuries including bruising to his entire body, long-term pain to his back and leg, and recurring periods of dizziness.  (Id. ¶ 37.)  He was unable to work for approximately one month on account of these injuries.  (Id. ¶ 38.)  He also suffered emotional distress and mental anguish that manifested in loss of sleep and loss of appetite.  (Id. ¶ 39.)

## II.    Procedural History

On April 26, 2021, Kye and Kiyee filed the present action.  (ECF 1.)  On February 7, 2022, an Amended Complaint was filed, replacing several John and Jane Doe defendants with named defendants.  (ECF 54.)  A Second Amended Complaint was filed September 19, 2022, by Kye alone, with Kiyee no longer joined as a plaintiff.  (ECF 91.)  Kye was granted leave to amend his complaint a third time (ECF 95.), and on November 10, 2022, he filed a Third Amended Complaint (ECF 98.).  Accordingly, the Court assumes that the Third Amended Complaint provides the best and strongest formulation of Kye's claims.

## DISCUSSION

## I.    Applicable Law.

Defendants move to dismiss under Rule 12(b)(6), Fed. R. Civ. P., for failure to state a claim upon which relief can be granted.  To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (internal quotation marks omitted).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Id.  "The plausibility standard . . . asks for more than a sheer possibility that a defendant has acted unlawfully."  Id.  Legal conclusions and "[t]hreadbare recitals of the

5

elements of a cause of action, supported by mere conclusory statements," are not entitled to any presumption of truth.  Id.

II.      Plaintiff's Section 1983 Claims.

To state a claim under section 1983, a plaintiff must allege that state officials, acting under color of state law, deprived him of a right guaranteed to him by the Constitution or federal law.  42 U.S.C. § 1983; see Graham v. Henderson, 89 F.3d 75, 79 (2d Cir. 1996).  Kye brings four claims under section 1983 against the Individual Defendants.  He alleges that (i) he was subjected to false arrest in violation of the Fourth Amendment, (ii) the officers intentionally interfered with and prevented him from exercising his First Amendment right to record the police action in progress, (iii) he was subjected to excessive force in violation of the Fourth Amendment, and (iv) he was subjected to differential treatment from similarly situated white individuals in violation of the Equal Protection Clause of the Fourteenth Amendment.

Kye also brings a section 1983 claim for municipal liability against the City of New York, alleging that the First Amendment violation perpetrated by the Individual Defendants is traceable to the City's failure to properly train and supervise them.

Defendants move to dismiss each of these claims except the excessive force claim.  (ECF 108 ("Def. Br.") at 1 n.1.)  The Court will examine each of the remaining claims in turn.

A.      False Arrest.

The Fourth Amendment guarantees the right of an individual to be free from unreasonable seizures, including arrest without probable cause.  See Weyant v. Okst, 101 F.3d 845, 852 (2d Cir. 1996).  "The elements necessary to state a claim for false arrest under § 1983 are the same as those necessary to state a claim for false arrest under New York law."  Little v.

6

City of New York, 487 F. Supp. 2d 426, 437 (S.D.N.Y. 2007) (Chin, J.) (citing Weyant, 101 F.3d at 852).  "Under New York state law, to prevail on a claim of false arrest a plaintiff must show that '(1) the defendant intended to confine him, (2) the plaintiff was conscious of the confinement, (3) the plaintiff did not consent to the confinement and (4) the confinement was not otherwise privileged.'"  Jocks v. Tavernier, 316 F.3d 128, 134–35 (2d Cir. 2003) (quoting Broughton v. State, 37 N.Y.2d 451, 456 (1975)).  "Because the existence of probable cause makes a confinement privileged, it is 'a complete defense to an action for false arrest, whether that action is brought under state law or under § 1983.'"  Diop v. City of New York, 50 F. Supp. 3d 411, 418 (S.D.N.Y. 2014) (quoting Weyant, 101 F.3d at 852).  "When an arrest is not made pursuant to a judicial warrant, the defendant in a false arrest case bears the burden of proving probable cause as an affirmative defense."  Dickerson v. Napolitano, 604 F.3d 732, 751 (2d Cir. 2010) (citing Broughton, 37 N.Y.2d at 458).

    "An officer has probable cause to arrest when he or she has knowledge or reasonably trustworthy information of facts and circumstances that are sufficient to warrant a person of reasonable caution in the belief that the person to be arrested has committed or is committing a crime."  Kee v. City of New York, 12 F.4th 150, 158 (2d Cir. 2021) (internal quotation marks omitted).  "The question of whether or not probable cause existed may be determinable as a matter of law if there is no dispute as to the pertinent events and the knowledge of the officers."  Weyant, 101 F.3d at 852.  "To assess probable cause, a court considers only the facts available to the officer at the time of the arrest and immediately before it."  Kee, 12 F.4th at 158 (internal quotation marks omitted).  A court "must examine the totality of the circumstances of a given arrest" and judge those circumstances "from the perspective of a reasonable police

officer in light of his training and experience." <u>United States v. Delossantos</u>, 536 F.3d 155, 159 (2d Cir. 2008).

"The law has long recognized that probable cause does not demand evidence of every element of a crime – not even to support a person's arrest." <u>Ganek v. Leibowitz</u>, 874 F.3d 73, 86 (2d Cir. 2017). But "under some circumstances, a police officer's awareness of the facts supporting a defense" to a crime "can eliminate probable cause." <u>Jocks</u>, 316 F.3d at 135. "Defenses which negate the existence of a crime should similarly negate probable cause." <u>Id.</u> Nevertheless, while an arresting officer is not permitted "to deliberately disregard facts known to him which establish justification," the officer has no duty to "investigate exculpatory defenses offered by the person being arrested or to assess the credibility of unverified claims of justification before making an arrest." <u>Id.</u> at 136; <u>see also</u> <u>Ricciuti v. N.Y.C. Transit Auth.</u>, 124 F.3d 123, 128 (2d Cir. 1997) ("Once a police officer has a reasonable basis for believing there is probable cause, he is not required to explore and eliminate every theoretically plausible claim of innocence before making an arrest.").

Where a plaintiff has been "convicted of the charges against him, that conviction normally 'would be conclusive evidence of probable cause,'" but "'evidence of a subsequent dismissal . . . would be admissible to refute justification.'" <u>Weyant</u>, 101 F.3d at 852 (ellipses omitted) (quoting <u>Broughton</u>, 37 N.Y.2d at 458.).

Defendants argue that Kye's false arrest claim must fail because the officers had probable cause to arrest him. The Complaint alleges that Kye was out past 8 p.m. and was not exempt, and therefore, defendants argue, in violation of curfew under EEO 118. Kye concedes that the Complaint alleges he was out past the 8 p.m. curfew and does not allege that he was subject to one of the categorical carveouts, but he argues the Individual Defendants did not have

probable cause that he was in knowing violation of EEO 118.  He highlights that he was arrested shortly after the 8 p.m. curfew began, a change from the previous night's 11 p.m. curfew.  The Complaint also quotes from an alleged NYPD policy, issued the same day EEO 118 took effect, requiring that warnings be issued before arresting anyone.  Kye argues that under these circumstances, where no warning or dispersal order was issued, officers could not have had probable cause that Kye was knowingly violating EEO 118.

Here at the pleading stage, limited solely to the allegations in the Complaint, the Court is unable to conclude as a matter of law that the Individual Defendants had probable cause to arrest Kye.  Assessment of probable cause is highly context-dependent, and the record of the relevant circumstances is currently insufficient.

One difficulty is the nature of the offense for which Kye was arrested.  The Complaint alleges that Kye was issued a summons for "curfew violation," and on June 2 the operative Curfew Order was EEO 118.  As discussed, EEO 118 states that "no persons" shall be outside during the stated time frame.  In the very next sentence, however, the order recites a long list of categories of persons to which "[t]his Order shall not apply," such as essential workers, those in medical need, and people experiencing homelessness.  While the first clause indicates that officers should be alert for anyone on the street after 8 p.m., the second clause suggests that an officer of reasonable caution might expect to encounter—perhaps frequently—exempt persons whose presence on the street would not be a curfew violation.  On the current record and briefing, it has not been established how the Individual Defendants differentiated between those subject to EEO 118 from those exempted.

Additionally, an EEO 118 misdemeanor curfew violation could only be committed "knowingly," and the Court has insufficient information regarding how a prudent

9

officer would have assessed this element of the offense under the circumstances alleged in the Complaint.  EEO 118 provides that "[f]ailure to comply with this Order shall result in orders to disperse, and any person who knowingly violates the provisions in this Order shall be guilty of a Class B misdemeanor."  EEO 118 § 4.  At least one Court of this district has characterized the dispersal orders as "explicitly required" by EEO 118 and has noted that the "fail[ure] to give such an order" might "be relevant evidence in connection with a claim of false arrest."  In re New York City Policing During Summer 2020 Demonstrations, 548 F. Supp. 3d 383, 408 (S.D.N.Y. 2021) (McMahon, J.).  Judge McMahon explained:

> If any officers who saw people out after curfew failed to give dispersal orders, they (the officers) failed to do their duty in the prescribed manner.  That failure could impact the officers' ability to prove that certain plaintiffs who were arrested violated the curfew "knowingly," which in turn could affect the analysis of probable cause to arrest.

Id. at 416 (denying as-applied vagueness constitutional challenge to EEO 118).  As alleged in the Complaint, the NYPD's own internal guidelines reflected the same understanding:  Officers were "required to issue reminders to anyone observed violating the curfew that they are not allowed in public and to direct them to return to their homes[, and] [e]nforcement will only be taken after several warnings are issued and the violator is refusing to comply."  (Compl. ¶ 19) (ellipses, brackets, and internal quotation marks omitted).

The parties disagree about how the alleged failure to give a dispersal order impacts a probable cause determination.  Kye urges the Court to conclude that the failure to issue a dispersal order "negated" any probable cause to arrest him.  Defendants argue that the failure to give a dispersal order is a complete red herring, and that it is sufficient that Kye admits he was out after curfew.

At this stage of the proceeding, the Court accepts neither position.  Probable cause is context-dependent and while the failure to give a dispersal order is relevant context, it is just one factor in the assessment.  Had the Individual Defendants issued a dispersal order, and had Kye refused to comply, there could be little doubt that they would have had probable cause to arrest him.  See e.g. Jeffrey v. City of New York, 20 Civ. 2843 (NGG) (RML), 2022 WL 204233 *2 (E.D.N.Y. Jan. 24, 2022) (plaintiff attending a barbeque arrested for curfew violation after refusing officers' instruction to proceed inside a building).  But this is not that case, and the absence of such an order means the Court needs additional context to properly assess whether the readily apparent circumstances provided probable cause.  The Court does not doubt that there are numerous factual scenarios where a prudent officer exercising reasonable caution might have encountered an individual out past the 8 p.m. curfew and, based solely on the readily apparent circumstances and context, had a sound belief that the individual was in knowing violation of a Curfew Order.  Under such circumstances, an arrest without a dispersal order might have violated the alleged NYPD policy, but that would not negate the probable cause that a crime had been committed.  The question remains whether Kye's circumstances fall into this category.

At the pleading stage, Kye is entitled to all reasonable inferences from the facts alleged in the Complaint.  Based on the otherwise minimal factual allegations therein, the Court cannot at this time determine as a matter of law whether the Individual Defendants had probable cause to arrest Kye for a knowing violation of EEO 118.

The record may, of course, look very different at the summary judgment stage.  The Court notes that defendants have not—at the current stage of the litigation—raised the potential defense of qualified immunity, including the nested question of whether the Individual Defendants' actions meet the lower standard of arguable probable cause.  See Triolo v. Nassau

11

Cnty., 24 F.4th 98, 107 (2d Cir. 2022) ("Even where actual probable cause does not exist, an officer may be entitled to qualified immunity on a § 1983 false arrest claim if his actions were objectively reasonable or if 'arguable probable cause' existed at the time of the arrest."); see In re New York City Policing During Summer 2020 Demonstrations, 548 F. Supp. 3d at 416 n.15 ("This court does not here hold that an officer would have to issue a dispersal order before s/he would have at least 'arguable probable cause' to arrest someone who is out after curfew without first giving a dispersal order.").  For now, however, the court provisionally finds that the Individual Defendants have failed to demonstrate that they had probable cause as a matter of law, and therefore Kye has plausibly stated a false arrest claim.

The motion to dismiss the false arrest claim will be denied.

B.      First Amendment Retaliation.

"'To plead a First Amendment retaliation claim a plaintiff must show: (1) he has a right protected by the First Amendment; (2) the defendant's actions were motivated or substantially caused by his exercise of that right; and (3) the defendant's actions caused him some injury.'"  Pesola v. City of New York, 15 Civ. 1917 (PKC) (SN), 2016 WL 1267797, at *11 (S.D.N.Y. Mar. 30, 2016) (quoting Dorsett v. Cnty. of Nassau, 732 F.3d 157, 160 (2d Cir. 2013)).  "A plaintiff must allege that he was engaged in speech protected by the First Amendment to satisfy the first element."  Id.  As a general matter, "[t]he party asserting that its conduct is expressive bears the burden of demonstrating that the First Amendment applies, and that party must advance more than a mere 'plausible contention' that its conduct is expressive."  Church of Am. Knights of the Ku Klux Klan v. Kerik, 356 F.3d 197, 205 (2d Cir. 2004) (internal citations omitted).

Kye alleges that at the time of his arrest he was engaged in a protected activity, specifically the right to observe or record police action.  (Compl. ¶ 73.)  This Court has previously acknowledged that—in certain situations—the First Amendment protects "the right to record police activity in public."  Higginbotham v. City of New York, 105 F. Supp. 3d 369, 380 (S.D.N.Y. 2015) (Castel, J.).  Recording an event "is an essential step towards an expressive activity, at least when performed by a professional journalist who intends, at the time of recording, to disseminate the product of his work."  Id. at 378.

The Complaint, however, does not allege that Kye was recording the police or that he was otherwise engaged in journalistic activity.  As alleged, he was watching the police and he asked his cousin to record the events herself.  There is no allegation that this encounter was itself related to a protest or other expressive activity.  The Second Circuit has not recognized within the First Amendment a freestanding "right to observe the police" untethered from other expressive activity, and at least one other Circuit has found it doubtful that simply "observing police conduct" is itself "expressive."  Molina v. City of St. Louis, Missouri, 59 F.4th 334, 338–39 (8th Cir. 2023) (citing Colten v. Kentucky, 407 U.S. 104, 109 (1972)) (finding no clearly established First Amendment right to observe police officers as of 2015).

Kye nevertheless maintains he has a First Amendment right to observe police activity flowing from his First Amendment "right to receive information," as identified in Board of Education, Island Trees Union Free School District No. 26 v. Pico, 457 U.S. 853 (1982), and Virginia State Board of Pharmacy v. Virginia Citizens Consumer Council, Inc., 425 U.S. 748 (1976).  Pico addressed how "the removal of books from the shelves of a school library" implicated "the First Amendment rights of students."  457 U.S. at 866.  Starting with the existing "rights of free speech and press," the Court derived a corollary "right to receive information and

13

ideas" in two ways.  Id. at 867 (internal quotation marks omitted).  "First, the right to receive

ideas follows ineluctably from the sender's First Amendment right to send them," and second,

"the right to receive ideas is a necessary predicate to the recipient's meaningful exercise of his

own rights of speech, press, and political freedom."  Id.  Applying similar logic to the advertising

context, Virginia State Board of Pharmacy recognized that "[i]f there is a right to advertise, there

is a reciprocal right to receive the advertising."  425 U.S. at 757.

   The throughline of these cases is that individuals have a First Amendment right to

receive ideas or respond to other expressive conduct because conveying and propagating ideas

inherently involves parties receiving those ideas.  But the underlying premise is that the

information transmitted and/or received is itself expressive.  Kye has not alleged that he was

receiving any expressive content at the time of his arrest—he alleges that he was watching police

apprehend a third party and does not allege that the individual being apprehended was engaged

in protected First Amendment activity.  He therefore has not adequately alleged he was engaged

in protected activity at the time of his arrest.

   The First Amendment retaliation claim will be dismissed.

   C.  Equal Protection.

   Kye alleges that his rights under the Equal Protection Clause of the Fourteenth

Amendment were violated by the selective enforcement of the Curfew Order against him.  "To

prevail on such a claim, a plaintiff must prove that (1) the person, compared with others similarly

situated, was selectively treated, and (2) the selective treatment was motivated by an intention to

discriminate on the basis of impermissible considerations, such as race or religion."  Hu v. City

of New York, 927 F.3d 81, 91 (2d Cir. 2019) (internal quotation marks omitted).  A selective

enforcement claim requires proof of both "disparate treatment and impermissible motivation,"

and the plaintiff must "prove that the disparate treatment was <u>caused by</u> the impermissible motivation." <u>Id.</u> (internal quotation marks omitted).  Conclusory allegations alone are insufficient to establish a plausible equal protection claim.  <u>See</u> <u>Burgis v. New York City Dep't of Sanitation</u>, 798 F.3d 63, 69 (2d Cir. 2015).

   In this context, "similarly situated" does not require the plaintiff and comparators to be identically situated, but only requires "a reasonably close resemblance of the facts and circumstances." <u>Graham v. Long Island R.R.</u>, 230 F.3d 34, 40 (2d Cir. 2000).  The Complaint alleges that during the events in question, there were two white males also standing nearby and recording the police on their devices.  (Compl. ¶¶ 34–35.)  Neither of these individuals were arrested and both were simply directed to leave the area.  (<u>Id.</u>)  Defendants argue that these two individuals were not "similarly situated" because the officers could not have arrested the white men filming Kye's arrest while they were actively engaged in that arrest.  (Def. Br. at 8.)

   Defendants' argument is unavailing for several reasons.  First, even if the two white males only observed the arrest of Kye rather than the original arrest of the unidentified black male that would still leave them in essentially the same position as Kye had been when he was arrested.  Kye was allegedly observing the arrest of a black male by a group of officers, and several of them broke off to arrest him.  The two white men were allegedly observing the arrest of Kye, a black male, by a group of officers, and the officers that broke off and approached the two white men simply asked them to leave.  Second, defendants' claim that the officers could not have arrested the two white males because they were "actively engaged" in Kye's arrest does not comport with the Complaint, which alleges the men were only approached "[a]fter [Kye] was in custody."  (Compl. ¶ 34.)  The Court is satisfied that as alleged the two white males were similarly situated in all material respects and were not subjected to the same treatment as Kye.

15

But the Complaint must also adequately allege that this disparate treatment was motivated by Kye's race, specifically that Kye was singled out among those present "at least in part 'because of,' not merely 'in spite of,'" his race.  Pers. Adm'r of Massachusetts v. Feeney, 442 U.S. 256, 279 (1979); see Hayden v. Paterson, 594 F.3d 150, 163 (2d Cir. 2010).  The Complaint alleges that "[t]he difference in treatment of Plaintiff and his cousin and the white males, persons engaged in identical conduct, is attributable only to the difference in skin color." (Compl. ¶ 83.)  This bare legal conclusion is insufficient without additional support, and Kye offers no facts tending to show any racial animus.  The Equal Protection claim has therefore not been adequately pleaded.

The Equal Protection claim will be dismissed.

D.      Municipal Liability.

In addition to his claims against the Individual Defendants, Kye brings a claim for municipal liability under section 1983 against the City of New York pursuant to Monell v. Department of Social Services of the City of New York, 436 U.S. 658 (1978).  A municipality can be liable for a constitutional violation where the plaintiff demonstrates that a deprivation of rights occurred because of the municipality's official policy, custom, or practice.  Monell, 436 U.S. at 690.  In appropriate circumstances, a municipality may be liable for a constitutional violation if "'the failure to train amounts to deliberate indifference to the rights' of those with whom the state officials will come into contact."  Young v. Cnty. of Fulton, 160 F.3d 899, 903 (2d Cir. 1998) (quoting City of Canton v. Harris, 489 U.S. 378, 388 (1989)).

Kye asserts that the City "failed to properly train and supervise its member police officers in the constitutional rights of its residents to observe or record police activity as long as such action does not interfere with official police action."  (Compl. ¶ 104.)  This allegation

16

relates to Kye's First Amendment retaliation claim regarding the exercise of his alleged constitutional right to observe the police.[2]  As discussed above, this claim is dismissed.  "It is well-settled that a <u>Monell</u> claim cannot succeed without an underlying constitutional violation, and here there is no constitutional violation."  <u>Mastromonaco v. Cty. Of Westchester</u>, 779 F.App'x 49, 51 (2d Cir. 2019) (citing <u>City of Los Angeles v. Heller</u>, 475 U.S. 799 (1986)). Accordingly, the motion to dismiss Kye's section 1983  municipal liability claim will be granted.

      III.    <u>State Law Claims</u>.

        In addition to his claims under section 1983, Kye asserts state law claims for false arrest and excessive force, as well a claim for "free speech retaliation" under the New York State Constitution.  Defendants do not directly address these claims, but they state in a footnote that "they have moved on all claims in the [Complaint] with the exception of the excessive force claim." (Def. Br. at 1 n.1.)  Given defendants' silence regarding either the section 1983 or state law excessive force claim, the Court understands both claims—to the extent they are not simply restatements of a single claim—to be excepted from the motion to dismiss.

        As discussed above, claims for false arrest under New York law are "substantially the same" as section 1983 claims for false arrest.  <u>Weyant</u>, 101 F.3d at 852.  The Court will accordingly treat the state law false arrest claim together with the section 1983 claims, and the motion to dismiss will be denied as to both.  The City of New York is alleged to be liable for this state law violation under a theory of <u>respondeat superior</u>, and it therefore remains a defendant in

---

[2] The Court does not read the Complaint to bring a <u>Monell</u> claim based a policy or custom related to false arrest and excessive force in the enforcement of the Curfew Orders.  To the extent Kye argues the Complaint should be construed to state such claims, they would also be denied for failure to allege a policy, custom, or practice causally linked to the violation.  The Complaint alleges that the NYPD policy regarding enforcement of the Curfew Orders instructed officers to first issue reminders and give dispersal orders before taking enforcement actions, and the Complaint specifically alleges the Individual Defendants did not act in accord with this policy.  (Compl. ¶ 19.)

this action.  See Ackerson v. City of White Plains, 702 F.3d 15, 22 (2d Cir. 2012), as amended (Dec. 4, 2012).  (Compl. ¶ 89.)

Kye's free speech retaliation claim under the New York State Constitution will be dismissed.  "In contrast to 42 U.S.C. § 1983, which creates a private right of action for state officials' violations of the federal Constitution, 'no explicit constitutional or statutory authority sanctions a private right of action for violations of the New York State Constitution.'"  Buchanan v. City of New York, 556 F. Supp. 3d 346, 365 (S.D.N.Y. 2021) (Stein, J.) (brackets omitted) (quoting Wahad v. FBI, 994 F. Supp. 237, 238 (S.D.N.Y. 1998)).  "[T]he New York State Court of Appeals has recognized a 'narrow' implied cause of action where no other remedy is available."  Id. (quoting Brown v. State of New York, 89 N.Y.2d 172, 192 (1996)).  The prevailing view among Courts in this district is that no such right of action exists under the New York Constitution for claims that could be brought under section 1983.  Id. (cataloguing cases). As Kye's New York free speech retaliation claim is wholly duplicative of his section 1983 First Amendment retaliation claim, it will be dismissed.

The final count in the Complaint is a freestanding allegation of "violation of executive order" based on the failure of the Individual Defendants to issue orders to disperse before arresting Kye.  Neither the Complaint nor Kye's memorandum of law identifies the legal basis or theory under which this claim is brought, and the substance of the allegation appears duplicative of the claim for false arrest.  Accordingly, this claim will also be dismissed.

CONCLUSION

The Court has considered all arguments presented by the parties, including those not explicitly addressed herein.  The motion to dismiss is GRANTED in part:  The section 1983 claims for First Amendment retaliation, violation of the Equal Protection Clause, and municipal

liability, and the state law claims for free speech retaliation and violation of executive order are dismissed.  The motion is DENIED as to the false arrest claims.  The parties shall submit a proposed case management plan within 14 days.  The Clerk is respectfully directed to terminate the motion (ECF 107).

                              SO ORDERED.

                                                                     P. Kevin Castel
                                         United States District Judge

Dated:  New York, New York
           September 15, 2023